**IN THE COURT OF APPEALS OF IOWA**

No. 23-1211
Filed January 23, 2025

**RODNEY TEDROW,**
        Plaintiff-Appellee,

**vs.**

**FRANCIS THICKE,**
        Defendant-Appellant,

**and**

**RADIANCE DAIRY, LLC,**
        Intervenor/Co-Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Jefferson County, Lucy J. Gamon,

Judge.


        A dairy owner appeals a district court ruling that his former employee has

the right to recover possession of a tractor in a replevin action. **AFFIRMED.**


        Lucas C. Helling of Foss, Kuiken, Cochran, Helling & Willman, P.C.,

Fairfield, for appellants.

        Bryan J. Goldsmith and Carly M. Schomaker of Gaumer, Emanuel &

Goldsmith, P.C., Ottumwa, for appellee.


        Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

Radiance Dairy owner Francis Thicke described his long-time employee Rodney Tedrow as a "machinery junkie"—a farmer with a penchant for acquiring bigger or better equipment. That view was echoed by Tedrow's wife, Jill, who referred to his "constant buying obsession" when it came to farm implements. The implement involved in this replevin action is a blue 2002 New Holland TM150 tractor that Tedrow bought in 2019 and used in his work at the dairy. But when Tedrow quit his job in 2022, Thicke took the tractor. When Thicke refused to return it, Tedrow petitioned for replevin and damages.[1]

The district court granted his petition, finding Tedrow had a superior claim of ownership and Thicke wrongfully detained the tractor for more than a year. Thicke contests that ruling, alleging Tedrow acquired the tractor by fraud and has no rightful claim to own it. Because substantial evidence supports the replevin ruling, we affirm.

## I.     Facts and Prior Proceedings

Radiance Dairy is an organic farm and creamery in Fairfield owned and operated by Francis and Susan Thicke. Tedrow worked for the dairy for nearly two decades, starting when he was just a teenager, before giving his notice in 2022. At that point, he was earning about $40,000 per year. His duties included milking cows, putting in crops, and helping maintain the farm equipment. Tedrow also "farmed a little bit on the side with [his] dad and brothers."

---

[1] The district court granted Radiance Dairy's motion to intervene in Tedrow's replevin action against Thicke.

As part of his employment with the Thickes, Tedrow would sometimes bring his own machinery. When he started working full-time in 2006, Tedrow owned a 1466 International Harvester tractor that he used at the dairy. During the next sixteen years, Tedrow personally purchased up to ten other pieces of equipment that benefited the Thickes' operation. That equipment included a skid loader, a planter, combines, and tractors. Tedrow testified that he had an understanding with Thicke, who agreed to pay rent on the equipment until the loans were paid off "as long as we were using it on the farm." According to Tedrow's testimony, he bought insurance for the equipment he owned and claimed depreciation for it on his tax returns, but his employer funded its maintenance.

Thicke confirmed that Tedrow used some of his own equipment at the dairy. But Thicke spoke of their agreement as more haphazard. For example, when Tedrow showed up with a Puma 165 tractor in 2014, Thicke agreed to make the loan payments because "we used his tractor." Thicke then described the progression of their informal arrangement:

> And so more equipment started to show up, and so over time—there wasn't any kind of rental agreement. Over time his loan payments would come due. He would bring them to me, and then I would go after Susan when we had more money in the checking account, kind of to get a sympathetic ear. I would try to get it paid. And she felt I was suckered into this because we were doing it for a long time, and we were basically buying his equipment and he was keeping it.

Reflecting on these transactions, Thicke acknowledged the dairy received "some benefit" from using Tedrow's equipment, but Thicke believed "the cost was much greater than the benefit." Thicke recalled that in 2017 he had a heart-to-heart talk with Tedrow, advising that he shouldn't buy any more equipment and expect the

dairy to pay for it. According to Thicke, Tedrow followed that advice, with one notable exception—the TM150 New Holland tractor at issue in this replevin action.

Tedrow bought that tractor from Greiner Implement in November 2019.[2] But Tedrow and Thicke dispute its financing. Both agree the dairy owned an IH 5240 tractor that needed repairs. Thicke recalled telling Tedrow to use the IH 5240 tractor to negotiate a trade-in for the TM150 New Holland tractor they were using as a loaner. And Tedrow claimed that because his employer had not paid for his leased equipment in late 2018 or 2019, Thicke said he "could trade a tractor on the TM150." Jill Tedrow also testified that Thicke owed her husband rent for an outstanding bank loan and, rather than paying rent, Thicke "traded it in for the blue tractor."

Thicke agreed that he had not made the rental payments on Tedrow's equipment in 2018 and 2019. But he denied any discussion of transferring ownership of the IH 5240 tractor to Tedrow.

The district court ruling picks up the narrative from here:

> Regardless of whose backstory is true, the fact is that [Tedrow] brought the Case IH 5240 Tractor to Greiner Implement and presented it as his to trade. Greg Greiner informed [Tedrow] that he would give him a total price of $37,700 for the TM150 tractor, with a $20,000 trade-in allowance for the Case IH 5240 tractor. [Tedrow] agreed to these terms.

The farm equipment lender, AgDirect, listed Tedrow as the buyer. And Tedrow was identified as the debtor on the UCC financing statement filed with the Iowa Secretary of State. Tedrow also held the insurance policy for the tractor and

---

[2] Greiner had supplied Tedrow with the blue tractor as a loaner when his 165 Case Puma tractor was in for repairs.

depreciated its worth on his 2019, 2020, 2021, and 2022 tax returns. But Thicke paid for repairs and made loan payments on the blue tractor starting in 2020.

Trouble flared in April 2022 when other loan payments came due.[3] Tedrow recalled that when he gave the notes to Thicke, the employer said: "Why do you think I'm going to pay this?" Tedrow answered: "Because that's how we do it." When Thicke refused to make the payments, Tedrow gave two weeks' notice.

After giving his notice, Tedrow moved the blue tractor to his house. But Thicke "came and got it." Tedrow "called the law," but officers told him it was a civil matter. Tedrow then enlisted a lawyer to demand return of the tractor. When Thicke refused, Tedrow filed this replevin action.

The district court set the matter for trial. On the plaintiff's side, the court heard testimony from Tedrow; his wife Jill; Latisha Coleman, another dairy employee; and machinery dealer Greiner. Francis and Susan Thicke both testified for the defense. After considering the parties' competing claims, the district court determined that Tedrow had the superior claim for ownership of the TM150 tractor and so had the right to immediate possession. *See* Iowa Code § 643.17 (2022). The court noted that Thicke's defense was "premised not on a claim of legal ownership, but on the assertion that [Tedrow] had committed fraud or wrongful conversion in taking the IH tractor to Greiner Implement for trade." The court saw problems with that defense: "[S]uch claims may not be evaluated in a replevin action, because no other actions or counterclaims can be joined in a replevin

---

[3] Thicke testified that he "had hopes that [Tedrow] could take over the dairy eventually." But Thicke claimed that "over time" he and Susan realized "our dairy is very complicated" and "that he didn't have the skill set to do it."

action. A potentially wrongful trade-in does not controvert the simple fact of Plaintiff's ownership of the TM150 tractor, as testified to by Mr. Greiner." On top of returning the tractor to Tedrow, the district court ordered Thicke to pay $2889 in damages for wrongful detention of the tractor. *See id.* Thicke appeals.

## II.      Scope and Standard of Review

We review replevin rulings for the correction of errors at law.[4] *See Prenger v. Baker*, 542 N.W.2d 805, 807 (Iowa 1995). "We will not disturb the trial court's findings of fact as long as they are supported by substantial evidence in the record." *Id.* Tedrow "had the burden to prove by a preponderance of the evidence [he] was entitled to possession of the" tractor when he filed the petition for replevin. *Marx Truck Line, Inc. v. Fredricksen*, 150 N.W.2d 102, 105 (Iowa 1967).

## III.      Discussion

Under Iowa Code chapter 643, "[r]eplevin actions are highly specialized procedures, carefully designed for a narrow purpose: to restore the property to the party entitled to its immediate possession." *Ankeny Cmty. Sch. Dist. v. Van Gorp*, 501 N.W.2d 506, 507 (Iowa 1993). The key statute provides:

> The judgment shall determine which party is entitled to the possession of the property, and shall designate the party's right therein, and if such party have not the possession thereof, shall also determine the value of the right of such party, which right shall be absolute as to an adverse party . . . .

Iowa Code § 643.17.

---

[4] Thicke mistakenly argues that our review is de novo. But "[r]eplevin is an action at law triable by ordinary proceedings and the trial court's findings of fact have the force and effect of a jury verdict." *Short v. Martin*, 121 N.W.2d 154, 156 (Iowa 1963). "We can only consider errors assigned by appellant." *Glenn v. Keedy*, 80 N.W.2d 509, 511 (Iowa 1957).

In challenging the district court's determination that Tedrow was entitled to possession of the New Holland TM150 tractor, Thicke reprises his claim that Tedrow misrepresented to Greiner Implement that he owned the Case IH 5240 tractor offered as a trade-in. Thicke complains that the district court relied "solely" upon Greiner's testimony and did not "engage in any analysis of the veracity" of Tedrow's claim that he owned the trade-in tractor. To support his claim, Thicke cites *Parsons v. Hedges* for the proposition that fraud may serve as a defense to the claim of replevin. *See* 15 Iowa 119, 120 (1863).

Tedrow concedes that premise but stresses that under *Parsons*, Thicke would have the burden to show that the sale of the TM150 tractor to Tedrow was fraudulent. *See id.* at 121 ("The defendants having failed to establish this fact, their case falls to the ground."). And Tedrow contends that Thicke did not carry that burden.

We agree with Tedrow's contention. Tedrow did not sneak the IH 5240 tractor into Greiner Implement in the dark of night. As Thicke testified, he directed Tedrow to "make a deal to trade this 5240 for the TM150," and Tedrow did so. Even if Tedrow did not tell Greiner that the dairy owned the 5240 tractor, as the district court concluded, "a potentially wrongful trade-in" did not change Tedrow's ownership of the TM150 tractor.

We also agree with the district court's conclusion that the Thickes' payment of the AgDirect loans did not prove their ownership of the TM150 tractor. As it

noted, the dairy "frequently made loan payments to [Tedrow's] farm implement lenders, never expecting that such payments created a right of ownership."[5]

True, the district court placed its "greatest emphasis" on Greiner's testimony that Tedrow was the purchaser of the TM150 tractor. But the district court did not stop there. The court also set out the testimony of dairy employee Coleman, who believed that the TM150 tractor belonged to Tedrow because he "took care of that tractor" and kept it in better condition than the equipment owned by the dairy. And, in crediting Tedrow's claim to the tractor, the court considered the course of dealings between Tedrow and Thicke on Tedrow's other machinery purchases. On this record, Tedrow met his burden to prove he was entitled to possession of the blue tractor. Substantial evidence supports the replevin ruling, and we find no error of law. So we affirm.

**AFFIRMED.**

---

[5] The court added: "At most, [the Thickes] may claim that such payments constituted unjust enrichment, another claim which may not be considered in a replevin action." We see no error in that ruling. *See Van Gorp*, 501 N.W.2d at 507 (noting that section 643.2 prohibits joinder of any cause of action not of the same kind and disallows any counterclaim).